```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RONDELLE PERKINS,                       :
                        Petitioner,     :
                                        :       06 Civ. 5361 (DLC)
        -v-                             :
                                        :       OPINION & ORDER
JOHN McGINNIS, Superintendent of        :
Downstate Correctional Facility,        :
                        Respondent.     :
                                        :
----------------------------------------X

Appearances:

Pro se Petitioner:
Rondelle Perkins
No. 02-A-3345
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442

For Respondent:
Vincent Rivellese
Assistant District Attorney
New York County
One Hogan Place
New York, New York 10013
```

DENISE COTE, District Judge:

Rondelle Perkins ("Perkins") brings this timely pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on one count of Attempted Murder in the Second Degree, N.Y. Penal Law §§ 110.00, 125.25(1), one count of Assault in the First Degree, id. § 120.10(1), one count of Robbery in the Second Degree, id. § 160.10(1), and one count of Criminal Possession of a Weapon in

the Second Degree, id. § 265.03(2), principally based on the prosecutor's exercise of a single peremptory challenge at trial. This case was referred to Magistrate Judge Douglas F. Eaton for a report and recommendation ("Report"). The Report was issued on June 27, 2008, and it recommends that the writ be denied and the petition dismissed on the ground that Perkins' claims are without merit. This Opinion adopts the Report.

I. Background

The evidence at trial established the following: On October 19, 2000, Earl Harrell confronted Perkins and Rodney Bailey in a "drug den" apartment at 518 West 148th Street in Harlem and complained that Perkins and Bailey were competing with him in the drug trade. After a struggle, Harrell was shot and his jewelry was removed from his body. Following an investigation, Perkins and Bailey were arrested and charged with one count of second degree attempted murder, two counts of first degree robbery, one count of second degree robbery, two counts of first degree assault, and one count of second degree criminal possession of a weapon.

A joint trial commenced in the New York Supreme Court, New York County, before Justice Budd G. Goodman, on April 3, 2002. Before jury selection began, the prosecutor filed a motion seeking the admission of uncharged crimes evidence against Perkins. The prosecutor sought to introduce evidence of

Perkins' drug dealing at the incident location and his possession of a .38 caliber black revolver at the incident location one to two weeks before Harrell was shot. The prosecutor argued that the evidence was admissible to establish Perkins' intent to cause serious physical injury or death to Harrell, Perkins' motive and opportunity to commit the crime, the relationship between Perkins and Harrell, and the identity of Perkins. According to the prosecutor, the evidence would also serve to rebut any self-defense claim Perkins might make at trial. Counsel for Perkins objected to the prosecutor's motion, contending that the evidence was inadmissible both because it was irrelevant and because it was unduly prejudicial. The court granted the prosecutor's motion, finding that the probative value of the evidence outweighed any prejudice and that the evidence was "necessary to complete the narrative and to provide a complete and accurate picture of the events which led to the crimes charged."

During jury selection, the first voir dire panel contained eighteen jurors, two of whom were Hispanic and one of whom was African American. These three jurors are at issue in Perkins' petition. Prospective juror Donna Lopez, who is Hispanic, affirmed that there was no reason why she could not serve as a juror in this case, that she had no problem with the trial schedule, and that she could speak and understand English. She

stated that her stepson had been convicted of a felony and was currently imprisoned, but that his predicament would not affect her ability to serve as a juror. Under questioning by defense counsel, Lopez stated that she believed her stepson had been falsely accused of a crime, which made her "[v]ery upset" and "angry."

Prospective juror Albert Dearmas, who is Hispanic, also affirmed that he was capable of serving on the jury. He stated that he did not have any problem "relating" to Lopez's statement that she believed that her son had been falsely accused of a crime. During its examination of Dearmas, the court explored a concern that Dearmas was ineligible for jury service because he did not live in New York County. It was determined, however, that Dearmas lived in the Marble Hill neighborhood, which, the court found, "is considered part of Manhattan . . . for jurisdictional purposes."

Prospective juror Libby Rockington, who is black, stated that she was capable of serving on the jury. She informed the court that she had been arrested when she was younger for disorderly conduct, but she had "gotten over" that arrest. She also described an extensive professional background and outside interest in law, medicine, and forensics, but confirmed that she would keep her specialized medical knowledge to herself during jury deliberations.

The prosecutor struck Lopez, Dearmas, and Rockington using peremptory challenges, and defense counsel raised a Batson challenge. The court observed that each of the three challenged jurors was either black or Hispanic, and asked the prosecutor "to explain to this Court why you've challenged those jurors since there's no other blacks or Hispanics on the panel." The prosecutor explained that he struck Lopez because she had stated that her son had been falsely accused of a crime. The court said that it understood the objection, and that it didn't "have a problem" striking Lopez. As to Dearmas, the prosecutor stated, "I don't think he was attentive and paid attention [sic], and he continued to rattle off questions and five jurors told him to stop talking . . . ." As to Rockington, the prosecutor stated that she "got her information from TV" and that his perception was that Rockington was "someone who was a little bit out there."

Counsel for Perkins contended that the prosecutor had not provided sufficient, race-neutral reasons for striking Dearmas and Rockington.[1] At this point, the trial judge stated that he was going to "exercise some discretion here":

---

[1] Counsel for Perkins' codefendant stated that Dearmas appeared "somewhat confused" during the questioning about where -- i.e., in which county -- Marble Hill is located. As to Rockington, codefendant's counsel caviled with the prosecutor's impression that the prospective juror derived too much information from television.

> I can understand that Mr. Dearmas was a
> little spaced out. However, I don't see any
> purpose for excusing Ms. Rockington at all.
> I'm going to overrule the People's challenge
> and she will be seated as a juror.

The Batson colloquy concluded with the judge's statement.

Among other evidence adduced by the prosecution at trial, Harrell testified and identified Perkins and Bailey as his assailants. Bailey, Harrell testified, shot him in the chest, and Perkins removed jewelry from his neck and fingers. When he was arrested, Bailey was wearing Harrell's stolen necklace. Two other eyewitnesses also identified Bailey and Perkins as the assailants; one of them testified that he saw Perkins hand Bailey a black revolver before Bailey shot Harrell, and that he had seen Perkins with the same revolver roughly a week earlier. Defense counsel did not call any witnesses.

On April 16, 2002, the jury convicted Bailey and Perkins of second degree attempted murder, second degree robbery, first degree assault, and second degree criminal possession of a weapon. Each was sentenced to concurrent prison terms of twenty years on the attempted murder count, seven years on the robbery count, fifteen years on the assault count, and seven years on the weapons count.

Perkins appealed and made three claims: (1) the prosecutor's peremptory strike of prospective juror Dearmas violated Perkins' constitutional rights under Batson v.

Kentucky, 476 U.S. 79 (1986); (2) the court improperly admitted evidence of Perkins' uncharged crime, specifically his possession of the .38 caliber weapon at the incident location one to two weeks before Harrell was shot; and (3) his twenty-year sentence was excessive and should be reduced in the interest of justice.

As to the Batson claim, Perkins' appellate counsel contended that the trial court "erred in failing to find intentional discrimination as to Mr. Dearmas given that the prosecutor's two proffered reasons underlying his strike" -- i.e., that Dearmas was inattentive, and that he talked too much and was told to be quiet by five jurors -- "were not supported by the record." Appellate counsel also suggested that the trial court's decision to seat Rockington as a juror while excusing Dearmas represented an impermissible "compromise ruling." As to the uncharged crimes evidence, appellate counsel contended that it was wrongly admitted under People v. Molineux, 168 N.Y. 264 (1901), because it "did not complete any narrative of events and was not relevant to any charged crimes." Finally, appellate counsel contended that Perkins' sentence was excessive, principally because Perkins' "exact involvement [in the crime] was unclear."

The Appellate Division affirmed Perkins' conviction and sentence on January 11, 2005. See People v. Bailey, 14 A.D.3d

362 (N.Y. App. Div. 1st Dep't 2005). The court rejected Perkins' Batson challenge because it was "unpreserved and unavailing." Id. at 362. The Appellate Division did not explain the basis for its rejection of Perkins' claim on procedural grounds. As to the substance of his Batson claim, however, the court ruled that the trial court's "express finding" that Dearmas was "spaced out" constituted its acceptance, "based on its own observations of the juror's behavior, of the prosecutor's demeanor-based explanation for the peremptory challenge." Id. at 363. In making such a finding, the Appellate Division held, the trial court determined "that the specifically articulated, nondiscriminatory reasons provided by the prosecutor for the challenge in question were not pretextual," thus satisfying its obligations under Batson. Id.

The Appellate Division further ruled that the evidence of Perkins' uncharged crimes was admissible because the evidence "was relevant to show that Perkins had access to [the handgun], thus tending to establish his involvement in the charged crimes," id., and that the trial court's admission of the evidence "encompassed this theory of admissibility." Id. Finally, the Appellate Division "perceive[d] no basis for reducing the sentence." Id. The Court of Appeals denied Perkins leave to appeal on April 4, 2005. See People v. Perkins, 4 N.Y.3d 856 (2005).

8

Perkins filed his habeas petition on June 12, 2006. It included a form cover sheet and the table of contents from his brief submitted to the Appellate Division. Magistrate Judge Eaton issued his Report on June 27, 2008, recommending denial of Perkins' petition. Perkins' timely objection, which is addressed only to the Batson claim, was received by the Court on August 14, 2008.

II. Discussion

The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court must make a de novo determination of the portions of the report to which petitioner objects. 28 U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). "To accept the report and recommendations of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions. When the state court has reached the merits of the petitioner's constitutional claim, habeas relief may not be

9

granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2).

   A.  Batson Claim

In Batson and its progeny, the Supreme Court outlined a tripartite burden-shifting framework that trial courts employ to determine whether the prosecutor's exercise of peremptory strikes violated the defendant's right to equal protection:

> First, the defendant must make a prima facie showing, based on any . . . relevant circumstances, that the government's peremptory challenge was racially motivated. The [Supreme] Court noted, as examples, that a pattern of exercising strikes against jurors of a particular race, or a prosecutor's racially-biased questions and statements during voir dire, might be sufficient to establish a prima facie case. Second, if the defendant makes such a prima facie showing of racial motivation, the prosecutor is required to give a race-neutral explanation for the peremptory challenge. Third, if the prosecutor gives a race-neutral explanation, the trial court must then determine whether the defendant has established that the peremptory challenge was motivated by race.

Cousin v. Bennett, 511 F.3d 334, 337 (2d Cir. 2008)(citation omitted). "Since a finding as to whether there was intentional discrimination is a finding of fact, and the trial court

findings in this context largely will turn on evaluation of credibility, the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous." United States v. Douglas, 525 F.3d 225, 239 (2d Cir. 2008)(citation omitted).

Because Perkins did not object to the prosecutor's striking Lopez, and because Rockington was ultimately seated on the jury, Perkins' Batson claim concerns only Dearmas. The prosecutor struck all three jurors of color from a panel of eighteen prospective jurors. This is sufficient to make out a prima facie case under Batson. See Johnson v. California, 545 U.S. 162, 169-70 (2005); Overton v. Newton, 295 F.3d 270, 279 n.10 (2d Cir. 2002). The prosecutor's race-neutral justification for striking Dearmas was that he "continued to rattle off questions and five jurors told him to stop talking . . . ." In making the required findings under step three of the Batson analysis, the court found that Dearmas was "a little spaced out" and granted the prosecutor's strike.

In his brief before the Appellate Division, Perkins contends that there was no support in the record for the trial court's finding that Dearmas was "a little spaced out." According to Perkins, the record reveals only the colloquy between the court and Dearmas concerning the location of Marble Hill, and that, "[i]mmediately following the colloquy, the next

11

prospective juror began to provide answers to the questionnaire." There is no record evidence, Perkins contends, to "indicate that Mr. Dearmas continued to ask questions or that other jurors had to silence him." The Appellate Division rejected this argument, finding that the court's observation that Dearmas was "spaced out" "clearly constituted the court's acceptance, based on its own observations of the juror's behavior, of the prosecutor's demeanor-based explanation for the peremptory challenge." Bailey, 14 A.D.3d at 362.

The Report found no error in the Appellate Division's ruling, observing:

> [A] trial record is not likely to reflect whether a potential juror is inattentive, or whether he talks while lawyers are talking to the judge, or whether other jurors try to shush him. Nevertheless, such things can be observed by the lawyers and the judge. The prosecutor made a record by specifically alleging that those three events occurred. Neither of the defense lawyers said that those allegations were inaccurate. All three of those allegations can be subsumed within the judge's pithy observation about the demeanor of Mr. Dearmas.

Relying on the Supreme Court's recent decision in Snyder v. Louisiana, 128 S.Ct. 1203 (2008), the Report correctly determined that deference to the trial court's finding that the prosecutor offered a satisfactory race-neutral justification for striking a prospective juror "is especially appropriate where a

12

trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." Id. at 1209.

In his objection, Perkins contends principally that the trial record does not support the prosecutor's assertion, and the trial court's finding, that Dearmas was too talkative to be seated as a juror. He contends that the trial court's finding that Dearmas was "spaced out" transposed the prosecutor's comment that prospective juror Libby Rockington "was a little bit out there"; that is, Perkins contends that the court's excusing Dearmas was erroneously based on "reasons that were given by the prosecution to challenge another juror."

Upon de novo review of Perkins' Batson claim, it is clear that the Appellate Division's decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law.[2] The Appellate Division permissibly found that the trial court's finding that Dearmas was "spaced out" constituted the outcome of its inquiry under step three of Batson, and it

---

[2] Under Second Circuit law concerning AEDPA review of habeas petitions, "when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits." Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006). Thus, for the purposes of Perkins' habeas petition, it is of no moment whether the Appellate Division explained the basis for its finding that his Batson claim was unpreserved. Even if it had, the Appellate Division's finding that the claim was "unpreserved and unavailing" would require this Court to review the claim on the merits. See Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006).

13

appropriately deferred to the trial court's independent observations of the juror and its demeanor-based assessment of the prosecutor.

As the Supreme Court has observed,

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

Miller-El v. Cockrell, 537 U.S. 322, 339 (2003)(citation omitted). Deference to the trial court's findings is "necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations." Id. The Supreme Court has thus anticipated Perkins' objection that the trial record is bereft of evidence that Dearmas was talking to his fellow jurors and was silenced by them. Absent a showing that the trial court's finding was "clearly erroneous," id. at 340, that finding will go undisturbed on habeas review. Perkins has made no such showing, and the fact that neither his counsel nor his codefendant's counsel objected to the prosecutor's and the trial judge's characterization of Dearmas during the Batson colloquy

14

only lends credence to the trial court's finding.[3]  Nor has Perkins marshaled any other evidence that might be probative of the prosecutor's discriminatory intent.  For example, he has not claimed that "the prosecutor's questions and statements during voir dire examination and in exercising his challenges . . . support . . . an inference of discriminatory purpose."  Id. at 344 (citation omitted).  Further, Perkins offers no non-speculative basis on which to find that the trial judge incorrectly ascribed to Dearmas the prosecutor's justification for striking Rockington.  As the Report rightly observed, the trial court's finding that Dearmas was "a little spaced out" was merely a pithy way of summarizing the prosecutor's objection to his demeanor.  Accordingly, Perkins' Batson claim is rejected.

---

[3]  Perkins' objection makes much of one line in the Report, which therefore bears some discussion here.  As noted above, the Appellate Division rejected Perkins' Batson claim both because it was "unpreserved" and because it was without merit.  In the Report, Magistrate Judge Eaton wrote that, "in my view, it is not crystal clear what the Appellate Division meant when it said 'Defendant's challenge to the sufficiency of the court's finding is unpreserved . . . .'"  The Report therefore eschewed the "procedural thicket of 'preservation,'" and addressed Perkins' Batson claim exclusively on its merits.  Perkins misconstrues the Report's admission that the Appellate Division's basis for finding Perkins' Batson claim to be unpreserved was not "crystal clear" as a concession that the trial record itself is not "crystal clear" as to the basis for the prosecutor's peremptory strike of Dearmas.  The Report perceived the lack of clarity in the Appellate Division's opinion only as to the issue of whether Perkins' claim was unpreserved.  Its comment about clarity had nothing to do with the merits of the claim.

B.  Uncharged Crimes Evidence

Perkins' challenge to the trial court's admission of uncharged crimes evidence concerns only the testimony of one witness who stated that one week before Harrell was shot, the witness had given Perkins a handgun that was similar to the one he saw Perkins hand to Bailey immediately before the attack on Harrell.[4]  Perkins argued at trial and on appeal that this testimony was inadmissible under New York evidence law because it did not fall within one of the exceptions to the general rule that evidence of prior crimes is inadmissible.  See Molineux, 168 N.Y. at 313.  The Appellate Division rejected Perkins' argument, finding that the testimony "was relevant to show that Perkins had access to such a weapon, thus tending to establish his involvement in the charged crimes . . . and its probative value outweighed any prejudicial effect."  Bailey, 14 A.D.3d at 363.

The Report found no error in the Appellate Division's holding.  It correctly observed that habeas relief does not lie for mere misinterpretation or misapplication of state law, see Estelle v. McGuire, 502 U.S. 62, 67 (1991), and that, where a habeas petition is predicated on an alleged evidentiary error, a

---

[4]  At trial, Perkins also objected to the admission of evidence concerning his drug-dealing at the incident site.  He did not raise this evidentiary issue on appeal, however, and so it is not before the Court in this petition.  See Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005)

petitioner must show that admission of the evidence was "so extremely unfair that its admission violate[d] fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)(citation omitted). Because Perkins made no showing that admission of the testimony in question deprived him of a fundamentally fair trial, the Report rejected his claim. Perkins has not objected to this aspect of the Report, and the Court can discern no clear error in the Report's reasoning. Accordingly, this claim is rejected.

    C.    Sentencing

Finally, Perkins claims that his twenty-year sentence was excessive. The Appellate Division "perceive[d] no basis for reducing the sentence," Bailey, 14 A.D.3d at 362, and the Report correctly observed that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Perkins has not objected to this aspect of the Report, and the Court can discern no clear error in this finding. Accordingly, Perkins' excessive-sentence claim is rejected.

CONCLUSION

The recommendation of Magistrate Judge Eaton is adopted and the petition for a writ of habeas corpus is denied. In addition, the Court declines to issue a certificate of

appealability. Perkins has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss the petition.

SO ORDERED:

Dated:   New York, New York
         September 10, 2008

/s/ Denise Cote
DENISE COTE
United States District Judge

Copies sent to:

Rondelle Perkins  Vincent Rivellese
No. 02-A-3345  Assistant District Attorney
Sing Sing Correctional Facility  New York County
354 Hunter Street  One Hogan Place
Ossining, New York 10562-5442  New York, New York 10013